IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 2:14-CR-270 |
| Plaintiff, | : | |
| | : | JUDGE GEORGE C. SMITH |
| vs. | : | |
| MOHAMMED I. AQEL, | : | |
| Defendant. | : | |

**SENTENCING MEMORANDUM OF THE UNITED STATES**

The United States, by and through undersigned counsel, submits its Sentencing Memorandum. For the reasons that follow, a sentence of 30 months' imprisonment, followed by a three-year term of supervised release, would be sufficient but not greater than necessary to achieve the statutory goals of sentencing.

**BACKGROUND**

On December 11, 2014, the grand jury returned an Indictment charging Defendant Mohammed I. Aqel with five counts, as well as a forfeiture allegation. On July 1, 2015, the parties filed a Plea Agreement to resolve this matter, pursuant to Federal Rule of Criminal Procedure 11. On July 13, Magistrate Judge King held Mr. Aqel's change of plea hearing, where he entered a guilty plea to Count 3 of the Indictment, charging him with possession of 15 or more counterfeit or unauthorized access devices. On that same day, Magistrate Judge King and issued a report and recommendation that this Court should accept Mr. Aqel's guilty plea. Neither party objected to the report and recommendation, and this Court accepted the guilty plea on August 6.

The Probation Office released the revised final Presentence Investigation Report on November 4. Sentencing in this matter is scheduled for November 10.

# ARGUMENT

The Probation Officer calculated that Mr. Aqel's Offense Level is 19 and his Criminal History Category is III. The Probation Officer correctly noted that these calculations would result in advisory guidelines ranges of a term of imprisonment of 37 to 46 months' imprisonment; a fine of $6,000 to $60,000; and a term of supervised release of 1 to 3 years.

Mr. Aqel filed one objection to the Presentence Investigation Report. The United States will first present argument on that objection, before turning to the statutory sentencing factors under 18 U.S.C. § 3553(a).

## I. The Probation Officer correctly increased Mr. Aqel's offense level by 2 levels for objection of justice.

Mr. Aqel's only outstanding objection is to a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. The adjustment comes from the destruction of Mr. Aqel's laptop. On December 20, 2013, Mr. Aqel provided one of his accomplices with his computer and instructed the accomplice to destroy it. PSR ¶ 28. The accomplice instead provided the computer to government agents. *Id.* After obtaining a search warrant, agents conducted forensic analysis on the computer and discovered that the computer stored stolen credit card numbers. *Id.* ¶ 29.

Mr. Aqel, in a letter dated September 10, 2015, objected to the adjustment for obstruction of justice on the ground that, in his view, the computer did not belong to Mr. Aqel. He asserts that the computer was in the possession of Mr. Aqel only so he could remove computer viruses and reprogram software.

The Probation Officer properly applied the enhancement. For starters, at this change of plea hearing on July 13, Mr. Aqel agreed that the Statement of Facts accurately represented that Mr. Aqel "provided the laptop to one of the accomplices and instructed the accomplice to destroy the laptop." Mr. Aqel further agreed that "[h]e did this in an attempt to obstruct or impede the investigation and/or prosecution of access device fraud." Moreover, he agreed that forensic analysis of the computer "revealed that the registered owner and only user was 'Moe's.'" and that he "used the alias 'Moe.'"

Furthermore, his Plea Agreement contains an agreement that the obstruction of justice enhancement applies. In paragraph 10(d) the Plea Agreement filed July 1, 2015, Mr. Aqel agreed that he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct, increasing the offense level by 2 levels." R.30 at PAGEID 67. He is bound by the terms of that Plea Agreement, and his contrary position is both factually unsupported and threatens a breach of the Plea Agreement.

For these reasons, the Probation Officer correctly increased Mr. Aqel's offense level by two levels, pursuant to U.S.S.G. § 3C1.1.

**II.      Guided by the statutory sentencing factors, the United States recommends a sentence of 30 months' imprisonment.**

Mr. Aqel hatched a conspiracy that resulted in the commission of serious federal felonies. He recruited associates to join a scheme in which individuals' credit card numbers are stolen using a device called a skimmer. A skimmer captures the account information encoded on a credit card's magnetic strip. PSR ¶ 24. In this scheme, Mr. Aqel and his coconspirators recruited fast-food workers to use the skimmer. *Id.* ¶¶ 24–25. When a customer used a credit card to pay for his or her fast-food order, the worker would swipe the credit card once through the restaurant's point-of-sale terminal (to pay for the food) and once through the skimmer (to steal the credit card number).

Mr. Aqel plugged the skimmer into his computer, which allowed him to capture the stolen credit card numbers. PSR ¶¶ 24, 28. He then made cloned versions of the stolen cards. By using an encoding device, he re-encoded the magnetic strips of gift cards, allowing him to make purchases at stores using the stolen credit card numbers. *Id.* ¶ 24. For example, on November 18, 2013, Mr. Aqel used a stolen credit card number to buy a genuine prepaid gift card at Speedway. He then used that genuine prepaid gift card to purchase cigarettes at Wal-Mart. *Id.* ¶ 26.

The actions of Mr. Aqel led to tens of thousands of dollars in loss, as the guidelines calculate loss. At least 13 financial institutions suffered out-of-pocket loss, and Mr. Aqel possessed at least 120 stolen

credit card numbers. PSR ¶ 43. The harm was widespread. The offense also represented an evolution of Mr. Aqel's criminal activity, which previously had not involved accomplices. *See id.* ¶¶ 57–72. The nature of the offense and Mr. Aqel's history and characteristics call for a substantial term of imprisonment. *See* 18 U.S.C. § 3553(a)(1).

The offense in this case also presents special risks to the public. *See* 18 U.S.C. § 3553(a)(2)(C). Both Mr. Aqel and his coconspirators used legitimate businesses to further their criminal activity. As for Mr. Aqel, he owned and operated a Marathon gas station during the period of the fraud, and he paid his accomplices in part by providing them with free gasoline. PSR ¶¶ 24–25. As for his accomplices, they used their legitimate employment at Wendy's and KFC to steal customers' credit card numbers. *Id.* ¶ 25. The public should be able to pump gas and go through the drive-thru without worrying that they are vulnerable to financial criminals.

Of particular concern to the United States, Mr. Aqel attempted to destroy evidence in order to avoid detection and prosecution. On December 20, 2013, Mr. Aqel gave his laptop computer to an accomplice and told her to destroy it. PSR ¶ 50. Rather than doing so, the accomplice provided it to agents. A forensic search of the laptop provided much of the evidence in this case. *See id.* ¶ 29. This obstructive behavior heightens the need for the sentence imposed to promote respect for the law and to afford general deterrence. *See* 18 U.S.C. § 3553(a)(2)(A)–(B).

Nevertheless, the United States recommends a sentence slightly below the bottom of the guidelines range. The nature and circumstances of the offense and need for the sentence imposed to reflect the seriousness of the offense will be served by a 30-month sentence. Two enhancements principally drive Mr. Aqel's offense level—the loss calculation and the leadership enhancement. Those enhancements result in an offense level beyond what is necessary to satisfy the purposes of sentencing.

The Probation Officer calculates the loss for sentencing purposes as $56,827.58. PSR ¶ 42. Mr. Aqel does not object to that calculation. But the Probation Officer also notes that the actual loss to victims was $8,327.58. *Id.* Similarly, the Probation Officer notes that while Mr. Aqel possessed 120 stolen credit card numbers, only 23 of those numbers were used to make purchases. *Id.* Mr. Aqel was thus unusually

unsuccessful in trying to commit credit card fraud. For this reason, his culpability is less than other defendants with the similar loss calculations.

Likewise, the Probation Officer applies an enhancement on the ground that Mr. Aqel was an organizer or leader of a criminal activity that involved five or more participants. PSR ¶¶ 47–48. Mr. Aqel does not object to his enhancement either, and he admitted in the Statement of Facts that he had at least four coconspirators in his scheme. Yet he qualifies for the enhancement by the skin of his teeth. Some of his coconspirators had only minimal participation in the criminal activity. For example, one of his coconspirators captured credit cards on a skimming device on only two occasions. *Id.* ¶ 25. Unlike the typical organizer or leader of criminal activity, Mr. Aqel did not direct a large-scale operation.

At day's end, Mr. Aqel committed a serious crime, but is less culpable than other individuals who have the same offense level as his. Although the bottom of the guidelines range is 37 months' imprisonment, the United States recommends a 30-month sentence, to be followed by a 3-year term of supervised release. The United States agrees with the Probation Officer that a fine is not appropriate in this case, but asks the Court to impose restitution in the amount of $8,327.58.

## CONCLUSION

For these reasons, a sentence of 30 months' imprisonment would be sufficient but not greater than necessary to achieve the statutory goals of sentencing.

Respectfully submitted,

CARTER M. STEWART
United States Attorney

s/Peter K. Glenn-Applegate
PETER K. GLENN-APPLEGATE (0088708)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
(614) 469-5715
Fax: (614) 469-5653
Peter.Glenn-Applegate@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Sentencing Memorandum was served this 9th day of November, 2015, electronically upon Samuel H. Shamansky, counsel for Defendant Mohammed I. Aqel.

s/Peter K. Glenn-Applegate
PETER K. GLENN-APPLEGATE (0088708)
Assistant United States Attorney